per cord, as freight from Winterport to Rockland.

The offer to sell the wood to Staples, and his acceptance, were both unconditional. When a proposition is made in writing, and sent by post, the person making the offer can retract or modify by a subsequent letter reaching the other party at any time before an answer of acceptance is written and put in the mail. But as soon as such answer is placed in the mail, the contract is closed as to both parties. Although a letter of retraction be actually on the way at the time when the letter of assent is mailed, yet the contract is closed, unless such letter of retraction be received prior to the mailing of the letter of assent. The acceptance by written communication takes effect from the time when the letter of acceptance is sent, and not from the time when it is received by the other party. Adams v. Lindsell, 1 Barn. & Ald. 681; Dunlop v. Higgins, 1 H. L. Cas. 381; Tayloe v. Merchants' Fire Ins. Co., 9 How. [50 U. S.] 390; The Palo Alto [Case No. 10,700]; Mactier v. Frith, 6 Wend. 103.

The property was in the possession of Staples, and no formal delivery was necessary to change the title. His letter of acceptance reached Reed before Reed's letter of Dec. 3 was written. And even if the modification of the contract by the letter of Dec. 3 took effect, and the wood was not to become the property of Staples "to move away and dispose of until he had complied with the conditions" of that letter, it is clear that, after that time, he would hold the cargo, not as agent of the owners of the schooner, but subject to the arrangement between Staples and the owners of the cargo. The owners of the schooner, after that time, were under no obligation to forward, in fact they had no right to forward, the cargo to Boston, the place of its original destination. If the libellants had any lien on the cargo until the price was paid, they clearly had no lien against the vessel, having waived any right to have the cargo delivered in Boston, and consented to accept it at an intermediate port.

And if any claim existed against the vessel, libellants should have enforced it within a reasonable time. What is a reasonable time is a question dependent upon the circumstances of each case; and the court, in the exercise of its discretion in determining this question, will be guided by the evidence of opportunities to enforce the lien, of the lapse of time, of the change, if any, of ownership. In this case, ten months had elapsed; the vessel had been in Massachusetts four times, and she was in Boston eighteen days before being libelled, consigned to the same person who, as agent of the libellants, had been the consignee of the cargo in controversy, and had been publicly advertised and sold before the service of the libel. If the libellants had any lien, they would have lost it by their neglect to enforce it under such circumstances. Decree affirmed, with costs.

## Case No. 17,899.
### WINTER'S BANK v. ARMSTRONG.

[Cited in First Nat. Bank v. Armstrong, 36 Fed. 61. No opinion filed; nowhere reported.]

## Case No. 17,900.
### In re WINTHROP.

[5 Law Rep. 24.]

District Court, D. Massachusetts.    March 26. 1842.

#### IMPRISONMENT OF BANKRUPT.

A judgment creditor enjoined from committing a bankrupt to prison.

[Cited in brief in Ex parte Hoskins, Case No. 6,712; Ex parte Waddell, Id. 17,027.]

In this case the bankrupt [Grenville T. Winthrop] presented his petition, setting forth that the petitioner, upon the 8th day of March, was, upon his petition to this court, declared to be a bankrupt; that an assignee had been appointed, according to the late act of congress [5 Stat. 440], in his behalf, and that it was necessary for him to be ready, at all times, for examination in regard to his affairs; that he had filed his petition for a discharge; that Ebenezer Trescott, of Boston, recovered a judgment against the petitioner, in the court of common pleas, at the last January term, and had sued out an execution thereon, and placed the same in the hands of a deputy sheriff of Middlesex, on March 22d, with written directions to collect the amount of the same, or commit the petitioner forthwith to prison, and in consequence of such directions, said deputy sheriff was about to commit the petitioner to jail. Wherefore he prayed, that said Trescott, and said deputy sheriff, and all other persons, might be enjoined from arresting or committing the petitioner to jail, until a hearing could be heard upon his petition for a discharge.

William C. Aylwin, for petitioner.
Ebenezer Trescott, pro se.

SPRAGUE, District Judge, sustained the application, and granted the injunction. He observed, that it appeared, by the affidavits of the petitioner and the assignee, that the presence of the petitioner was necessary, to give information to the assignee, and to assist him in relation to the estate; that the petitioner ought to be in a situation at all times to obey the orders of the court, and that his being in close confinement would conflict with the proper exercise of the jurisdiction of the court under the bankrupt law. But, besides this, the object and purpose of the creditor here were inconsistent with the object and purpose of the bankrupt law. He sought to coerce his debtor to give him a preference. The law forbad that preference. The object of enforcing the execution was to compel the debtor to turn out property, or to disclose